UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

CHRISTOPHER ELLIS,

                                  Plaintiff,                    9:17-cv-0577 (BKS/DJS)

v.

RONALD REQUIRES, et al.,

                                  Defendants.[1]

_____

**Appearances:**

*Plaintiff, pro se:*
Christopher Ellis
17-B-2522
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021

*For Defendants:*
Robert G. Behnke, Esq.
Broome County Attorney
Broome County Attorney's Office
Edwin L. Crawford County Office Bldg.
P.O. Box 1766, 60 Hawley Street
Binghamton, NY 13902

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff pro se Christopher Ellis brought this action under 42 U.S.C.§ 1983 alleging violations of his constitutional rights while he was a pretrial detainee at the Broome County

---

[1] The Clerk of the Court is respectfully requested to correct the spelling of the names of the Defendants on the docket to Ronald Riquier, Jason Cackowski, and Sgt. Jon Gillette.  (Dkt. No. 27; Dkt. No. 144-3; Dkt. No. 144-4; Dkt. No. 144-8).

Correctional Facility.  (Dkt. Nos. 1, 7, 10 and 63).  On December 13, 2019, counsel for Defendant Guinan filed a motion to dismiss under Fed. R. Civ. P. 25(a)(1) based upon the death of Defendant Guinan.  (Dkt. Nos. 116, 133).  On February 28, 2020, all of the Defendants filed a motion for summary judgment, seeking dismissal of the complaint. (Dkt. Nos. 144).  Plaintiff filed responses in opposition to the motions. (Dkt. Nos. 134, 152, 164).  These matters were referred to United States Magistrate Judge Daniel J. Stewart who, on September 4, 2020, issued two Report-Recommendations.  Magistrate Judge Stewart recommended that Defendant Guinan's motion to dismiss be granted because "[w]ell more than 90 days have elapsed since Guinand's death was noted on the record without any application to substitute a representative," and dismissal is mandatory under Fed. R. Civ. P. 25(a)(1) if no motion is timely filed.  (Dkt. No. 166, at 2).  Magistrate Judge Stewart recommended that Defendants' motion for summary judgment (Dkt. No. 144) be granted in part and denied in part, that plaintiff's third amended complaint be dismissed as to Plaintiff's claims "alleging he was forced to shower in shackles, retaliation, the denial of recreation, medical care, due process and excessive force in May 2017," and that an exhaustion hearing be held with respect to whether Plaintiff had available administrative remedies with respect to his April 4, 2017 excessive force claim. (Dkt. No. 165, at 14).[2]

Neither of the parties objected to the recommendation that the complaint be dismissed as to Defendant Guinan.  Both of the parties submitted responses to Magistrate Judge Stewart's Report-Recommendation as to the April 4, 2017 excessive force claim.  (Dkt. No. 169, 170).  Defendants responded to Plaintiff's submission.  (Dkt. No. 171).  Plaintiff did not respond to the

---

[2] Magistrate Judge Stewart also recommended that the Doe Defendants be terminated based on Plaintiff's failure to identify them. (Dkt. No. 165, at 2 n.2).

Defendants' objection even though Plaintiff requested and was granted an extension of time to do so. (Dkt. Nos. 172, 173). For the reasons set forth below, both Report-Recommendations are adopted in their entirety.

## II.     STANDARD OF REVIEW

This Court reviews *de novo* those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). "A proper objection is one that identifies the specific portions of the [report-recommendation] that the objector asserts are erroneous and provides a basis for this assertion." *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013) (internal quotation marks omitted). Properly raised objections must be "specific and clearly aimed at particular findings" in the report. *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009). "[E]ven a pro se party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal . . . ." *Machicote v. Ercole*, No. 06-cv-13320, 2011 WL 3809920 at *2, 2011 U.S. Dist. LEXIS 95351, at *4 (S.D.N.Y. Aug. 25, 2011) (citation omitted). Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Id*. To the extent a party makes "merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments" in the original submission, the Court will only review for clear error. *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008).

## III.    DISCUSSION

The issues currently before the Court concern Plaintiff's allegation that corrections officers used excessive force on April 4, 2017, and whether Plaintiff had available administrative remedies with respect to that claim. Plaintiff alleges that on April 4, 2017, after he disobeyed an

3

order from Corrections Officer Cackowski and then "gave Officer Cackowski a slight nudge" in response to Officer Cackowski's attempt to "force [Plaintiff] to his cell," Corrections Officer Riquier called a "code blue." (Dkt. No. 63, at 6). Plaintiff alleges that Officer Riquier then "attacked me from behind," and that Officer Riquier punched Plaintiff "several times" in the right side of his face while Officer Cackowski was holding Plaintiff's hands. (*Id.*). It is undisputed that several officers then came to the scene and that force was used to handcuff Plaintiff. The parties dispute whether the officers used excessive force. Plaintiff alleges that he needed seven stitches following the incident, and that he had to be taken to the hospital where it was determined that he had two fractures in his right eye. (*Id.* at 7).

Plaintiff further alleges that he made a timely request for a grievance form, on April 6th, 7th and 8th, but was told that he had to write to hearing officer Bochardt, and that Bochardt took three weeks to get Plaintiff a grievance. (Dkt. No 63, at 21). Plaintiff filed a grievance on April 27, 2017, but the grievance was denied as untimely. (Dkt. No. 144-24). There is a handwritten notation, "refused to sign," on the portion of the grievance form where Plaintiff could either agree to accept the decision or indicate that he seeks to appeal the decision. (*Id.*).

      A.      **Magistrate Judge Stewart's Report-Recommendation**

Magistrate Judge Stewart found that the Broome County Correctional Facility's inmate grievance process was available to Plaintiff. (Dkt. No. 165, at 5) (citing the Broome County Correctional Facility Inmate Handbook, Dkt. No. 144-22 at 28-29). Under its procedures, an inmate must "[a]ttempt to get the issue resolved with the housing officer." (*Id.*). Next, an inmate must request a grievance form from the grievance officer, complete the written grievance, and file the form within five business days. (*Id.*). If the inmate is not satisfied with the response from the grievance officer, the inmate may appeal to the Corrections Facility Administrator.

4

(*Id.*).  If the inmate is not satisfied with that response he may appeal to the State Commission on Correction.  (*Id.* at 5-6).

Magistrate Judge Stewart determined that Plaintiff had failed to fully exhaust his administrative remedies because his April 27, 2017 grievance was untimely and Plaintiff failed to appeal.  (Dkt. No. 165, at 6-7).  Magistrate Judge Stewart noted, however, that there was a factual dispute as to whether Plaintiff had requested a grievance form within the five-day time period for filing a grievance, and "a jail official's refusal to provide an inmate with necessary forms to process a grievance may provide a basis for excusing exhaustion."  (*Id.* at 9) (citing *Henry v. Liberty*, 2016 WL 11480174, at *6, 2016 U.S. Dist. LEXIS 94558, at *16 (N.D.N.Y. July 18, 2016), *report & recommendation adopted* 2016 WL 5462825, 2016 U.S. Dist. LEXIS 134228 (N.D.N.Y. Sept. 29, 2016).  Here, Plaintiff alleges that he requested a form from Defendant Borchardt "as early as April 8, 2017"; Defendant Borchardt, on the other hand, denies that Plaintiff requested a grievance form before April 25, 2017.  (Dkt. No. 165, at 9).  Magistrate Judge Stewart concluded that this presents "a credibility determination that cannot be resolved on this motion," and that a "question of fact preclude[s] summary judgment on the question of whether individuals interfered with Plaintiff's ability to grieve the assault alleged to have taken place on April 4, 2017."  (*Id.* at 10-11).[3]

In considering the merits of the April 2017 excessive force claim, Magistrate Judge Stewart recognized that Plaintiff "concedes that he was not entirely compliant with staff directing during the incident."  (*Id.* at 12).  However, Magistrate Stewart recommended that summary judgment be denied as to this claim because Plaintiff alleges that the force used was

---

[3] With respect to Plaintiff's remaining claims, Magistrate Judge Stewart found that Defendants were entitled to summary judgment based on Plaintiff's failure to exhaust administrative remedies as to any of those claims. (Dkt. No. 165, at 10-11).

5

excessive and there are factual disputes regarding "the relationship between the need for the use of force and the amount of force used, the threat reasonably perceived by the officers, and whether Plaintiff was actively resisting." (*Id.* at 13).

### B. The Parties' Responses to the Report-Recommendation

#### 1. New Evidentiary Submissions

As a preliminary matter, the Court notes that both parties have presented new evidence in response to the Report-Recommendation. Plaintiff has submitted documents that he identifies as "correspondence" dated April "6th, 7th, and 8th requesting grievance forms to address this matter." (Dkt. No. 170, at 1)  Defendants have filed an evidentiary response, in the event that the Court "allows the Plaintiff to supplement the record." (Dkt. No. 171-6, at 2).  Defendants have submitted an affidavit from the Jail Administrator at the Broome County Correctional Facility, Mark Smolinsky, stating, inter alia, that there is no record of the documents that Plaintiff asserts are "handwritten slips of paper purporting to request a grievance on April 8 and 11, 2017." (Dkt. No. 171, at 2).  Smolinsky notes that if Plaintiff had submitted a written request for a grievance it would have been submitted on a "request for consultation" form.  (*Id.*).[4]

Courts "generally do not consider new evidence raised in objections to a magistrate judge's report and recommendation." *Fischer v. Forrest*, 286 F.Supp.3d 590, 603 (S.D.N.Y.) (citation omitted).  "The submission of new evidence following such a report is merited only in rare cases, where the party objecting to a Report has offered 'a most compelling reason' for the late production of such evidence, or a 'compelling justification for [its] failure to present such evidence to the magistrate judge.'" *Id*. (citations omitted).  *See Hynes v. Squillace*, 143 F.3d

---

[4] Smolinksy also provided time records for Officers Cackowski and Borchardt, which show that Officer Cackowski was not at the correctional facility on April 6, 7 or 11, 2017, and that Officer Borchardt was at work on those days. (Dkt. No. 171, at 3).  Smolinsky states that Plaintiff could have asked Officer Borchardt for a grievance form on those days.  (*Id.*).

6

653, 656 (2d Cir. 1998) (noting that while the district court has "discretion to consider evidence that had not been submitted to the Magistrate Judge," "[c]onsiderations of efficiency and fairness militate in favor of a full evidentiary submission for the Magistrate Judge's consideration").  The parties have not presented, and the Court does not find, any compelling reason to consider new evidence submitted by the parties.  Since the Court is adopting the Report-Recommendation, there will be an evidentiary hearing to determine the factual issues concerning the exhaustion issue.

### 2. Plaintiff's Response

Plaintiff did not object to the Report-Recommendation.  In his one-page response Plaintiff asserts that the dates on the handwritten requests that he submitted are "well with in required time frame for a timely filing of the grievances," and that he looks forward to making his argument at the exhaustion hearing.  (Dkt. No. 170, at 1).

### 3. Defendants' Objections

Defendants object to the Report-Recommendation regarding the exhaustion analysis and the merits of the April 2017 claim.  (Dkt. No. 169).  With respect to exhaustion, Defendants argue that inconsistencies in the evidence "should preclude the finding that a question of fact requiring an evidentiary hearing exists regarding the availability of the grievance process," and that Plaintiff's grievance was untimely.  (*Id.* at 1-2).

Having reviewed this issue de novo, the Court concludes that Magistrate Judge Stewart correctly found that there are issues of fact that preclude summary judgment on the issue of the availability of administrative remedies.  Defendants' assertion that Plaintiff claimed "for the first time" on summary judgment that he was denied a grievance form is belied by the complaint.  In the complaint Plaintiff alleges that he "asked for a grievance'; that Cackowski told him to write to Borchardt; and that Bochardt "took 3 weeks to get me a grievance."  (Dkt. No. 63, at 21).

7

While Defendants argue that Plaintiff failed to "identify the Grievance Officer" who "refused to provide" Plaintiff the grievance form, Plaintiff has consistently stated that Cockowski told him to request a grievance form from Borchardt. (Dkt. No. 164, at 6; Dkt. No. 64, at 21). In his response to the motion for summary judgment, for example, Plaintiff asserts that the morning after the incident he "went back to the Box;" that he was moved from 137 to 117; that he "asked Cackowski for a grievance a day or 2 later," that Cackowski told Plaintiff to fill out a request; that Plaintiff filled out a request; made copies; and that the officer dropped them into the boxes but Borchardt never came. (Dkt. No. 164 at 6).

Defendants also argue that, in any event, they are entitled to summary judgment on the April 2017 excessive force claim. With respect to Officers Riquier and Cackowski, Defendants assert that their motion should be granted because Plaintiff "admits to resisting the Officers," and "continued to fight with the Officers," and the force necessary to bring Plaintiff under control was not excessive. (Dkt. No. 169, at 3). This is the same argument that Defendants made in their motion for summary judgment that was fully considered by Magistrate Judge Stewart in his Report-Recommendation. (Dkt. No. 165, at 12-13). The Court applies clear error review to objections that are "simply an attempt to rehash the same arguments that the magistrate considered and found deficient." *J.E. ex rel. Edwards v. Ctr. Moriches Union Free Sch. Dist.*, 898 F. Supp. 2d 516, 527 (E.D.N.Y. 2012). However, even under a de novo review standard, the Court agrees with Magistrate Judge Stewart. Plaintiff alleges, inter alia, that Defendant Riquier "punched [Plaintiff] several times in the right side of my face while [Defendant] Cackowski was holding [Plaintiff's] hands." (Dkt. No. 63, at 6). Plaintiff further alleges that Defendants Riquier, Doyle, Gillette, and Cackowski "got my hands behind my back which they could of did it with out beating me." (*Id.* at 7). The fact that some force was necessary does not entitle

8

Defendants to summary judgment because there are issues of fact as to whether the amount of force used was objectively reasonable under the circumstances. *Cf. Sullivan v. Gagnier*, 225 F.3d 161, 165 (noting that "[t]he fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of some degree of force but it does not give the officer license to use force without limit.").

Defendants also argue that summary judgment should be granted as to Defendants McPeek, Doyle, Mandyck, Gillette, and Brown because "Plaintiff does not dispute what Defendants say in their affidavits," and the Report-Recommendation focused on the actions of Riquier and Cackowski, and did not find a question of fact as to the claims against the other defendants. (Dkt. No. 169, at 2). McPeek and Mandyck, however, are not named defendants in this case, and therefore need not be considered. (Dkt. No. 63). The Court has reviewed this objection with respect to the remaining defendants de novo and concludes that Magistrate Judge Stewart correctly determined that summary judgment should be denied as to Doyle, Gillette and Brown concerning the alleged excessive force incident in April 2017.

There is no dispute that Gillette, Doyle and Brown responded to the scene, and that Gillette and Doyle were physically involved in restraining Plaintiff. (Dkt. No. 144-36, at ¶¶ 15-16; Dkt. No. 144-6, at 1; Dkt. No. 144-8, at 1; Dkt. No. 144-9, at 1). In assessing whether there are material issues of disputed fact, the Court is not limited to evidence submitted in connection with the summary judgment motion: the Court must also consider the allegations in Plaintiff's verified complaint. *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist, provided that it meets the other requirements for an affidavit under Rule 56(e)."). In his complaint Plaintiff alleges that after the

other officers arrived to assist Defendants Riquier and Cackowski, Sgt. Gillette and Officer Doyle jumped on Plaintiff's "head, neck and back." (Dkt. No. 63, at 6). Plaintiff alleges that the "beating" was not necessary to get Plaintiff's hands behind his back. (Dkt. 63, at 6-7). Plaintiff also alleges that when he was handcuffed, and being escorted "to medical," Sgt. Gillette punched Plaintiff in the face. (Dkt. No. 63, at 6-7). At this stage of the proceedings the Court must credit those allegations.

While Brown did not hit Plaintiff, and there is no evidence he was involved in escorting Plaintiff to medical, there is no dispute that Brown was at the scene where officers used force to restrain Plaintiff. (Dkt. No. 144-9, at 1). "An officer who does not personally inflict the injury at the core of an excessive use of force claim may still be liable under § 1983 where the officer fails to intervene to prevent the harm, in spite of a "realistic opportunity" to do so, and "observes or has reason to know ... that excessive force is being used." *Allen v. City of New York*, 480 F. Supp. 2d 689, 694 (S.D.N.Y. 2007) (quoting *O'Neill v. Krzeminski,* 839 F.2d 9, 11-12 (2d Cir. 1988), and *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir. 1994)). "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Allen*, 480 F. Supp. 2d at 694.

Here there is no dispute that Brown saw the officers' use of force to restrain Plaintiff. In his affidavit Brown states that he saw "Plaintiff struggling and resisting the officers"; that he did not see "any officers hitting or kicking the Plaintiff; and that "[t]he officers had to use force to control the Plaintiff." (Dkt. No. 144-9, at 1). Crediting Plaintiff's allegations that "Sgt. Gilette and Officer Doyal were jumping on his head, neck and back," and that the "beating" was not necessary to get Plaintiff's hands behind his back, Plaintiff has raised a material issue of fact as

10

to whether the force that Brown saw being used to restrain Plaintiff was excessive. And Defendants "have not presented undisputed evidence such that no reasonable jury could conclude that [Brown] had a realistic opportunity to intervene in [the] alleged constitutional violation." *Snead v. City of New York*, 463 F. Supp. 3d 386, 400 (S.D.N.Y. 2020); *see also Rosen v. City of New York*, 667 F. Supp. 2d 355, 359 (S.D.N.Y. 2009) (concluding that "[c]onsidering the fact-intensive inquiry" of a failure to intervene claim, the defendants "cannot satisfy their burden of proving that no genuine issue of material fact exists" regarding corrections officer's alleged failure to intervene to protect plaintiff during a fight with an inmate).

The Court has reviewed the remainder of the Report-Recommendation, as to which there was no objection, as well as the Report-Recommendation regarding the dismissal of claims against Defendant Guinan, for clear error and found none.

## IV.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Stewart's Report-Recommendation regarding the motion to dismiss all claims against Defendant Guinan (Dkt. No. 166) is **ADOPTED**; and it is further

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 133) is **GRANTED** and all claims against Defendant Guinan are **DISMISSED** under Fed. R. Civ. P. 25(a)(1); and it is further

**ORDERED** that Magistrate Judge Stewart's Report-Recommendation regarding the Defendants' motion for summary judgment (Dkt. No. 165) is **ADOPTED**; and it is further

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 144) is **GRANTED in part and DENIED in part;** and it is further

**ORDERED** that the third amended complaint (Dkt. No. 63) is **DISMISSED** as to Plaintiff's

claims alleging he was forced to shower in shackles, retaliation, the denial of recreation, medical care, due process, and excessive force in May 2017 for failure to exhaust administrative remedies; and it is further

  **ORDERED** that the claims against the John and Jane Doe Defendants are dismissed; and it is further

  **ORDERED** that the Defendants' motion for summary judgment is otherwise **DENIED**; and it is further

  **ORDERED** that an exhaustion hearing will be scheduled with respect to whether Plaintiff had available administrative remedies with respect to his April 4, 2017 excessive force claim; and it is further

  **ORDERED** that the Clerk serve a copy of this Order on the parties in accordance with the Local Rules.

  **IT IS SO ORDERED.**

Dated: November 12, 2020
   Syracuse, New York

*Brenda K. Sannes*
Brenda K. Sannes
U.S. District Judge