**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

CHRISTOPHER ELLIS,

                      Plaintiff,                  9:17-cv-00577 (BKS/DJS)

v.

RONALD RIQUIER, et al.,

                      Defendants.

---

**Appearances:**

*For Plaintiff:*
Ryan S. Suser
Bousquet Holstein PLLC
One Lincoln Center, Suite 1000
110 West Fayette Street
Syracuse, NY 13202

*For Defendants:*
Robert G. Behnke
Broom County Attorney
Broome County Office Building
60 Hawley Street
P.O. Box 1766
Binghamton, NY 13902

**Hon. Brenda K. Sannes, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I.  INTRODUCTION

Plaintiff pro se Christopher Ellis brought this action under 42 U.S.C. § 1983 alleging violations of his constitutional rights while he was a pretrial detainee at the Broome County Correctional Facility ("BCCF"). On February 28, 2020, Defendants moved for summary judgment seeking dismissal of the complaint based on, inter alia, Plaintiff's failure to exhaust his administrative remedies. (Dkt. No. 144). Plaintiff opposed the motion. (Dkt. Nos. 152, 164). This

matter was referred to United States Magistrate Judge Daniel J. Stewart who, on September 4, 2020, issued a Report-Recommendation finding that Plaintiff's April 4, 2017 excessive force claim was not exhausted because his grievance was denied as untimely and he failed to appeal that determination; Magistrate Judge Stewart, however, recommended that an exhaustion hearing be held to resolve factual questions as to whether the grievance process was available to Plaintiff in light of his allegation that BCCF officials refused to provide him with grievance forms that he had requested. (Dkt. No. 165, at 6-10, 14). Magistrate Judge Stewart recommended that Plaintiff's remaining claims be dismissed for failure to exhaust his administrative remedies. (Dkt. No. 165).

The Court adopted the Report-Recommendation, denied summary judgment on Plaintiff's April 4, 2017 excessive force claim, and ordered an exhaustion hearing. (Dkt. No. 174). After appointing pro bono counsel for Plaintiff, the Court conducted an evidentiary exhaustion hearing over a three-day period, concluding on June 30, 2021. Both parties submitted letter briefs following the hearing. (Dkt. Nos. 201, 202). For the reasons set forth below, the Court finds that Plaintiff failed to appeal the denial of his untimely grievance and thus failed to properly exhaust his administrative remedies as to the April 4, 2017 excessive force claim, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Accordingly, Plaintiff's complaint is dismissed with prejudice.

## II.    BACKGROUND

Plaintiff alleges that on April 4, 2017, after he disobeyed an order from Corrections Officer Jason Cackowski and then "gave Officer Cackowski a slight nudge" in response to Officer Cackowski's attempt to "force [Plaintiff] to his cell," Corrections Officer Ronald Riquier called a "code blue." (Dkt. No. 63, at 6). Plaintiff alleges that Officer Riquier "attacked [him] from behind," and that Officer Riquier punched Plaintiff "several times" in the right side of his

face while Officer Cackowski was holding Plaintiff's hands. (*Id.*). It is undisputed that several officers came to the scene and that force was used to handcuff Plaintiff. The parties dispute whether the officers used excessive force. Plaintiff alleges that he needed seven stitches following the incident, and that he had to be taken to the hospital where it was determined that he had two fractures in his right eye. (*Id.* at 7). Plaintiff further alleges that he made timely requests for a grievance form, on April 6th, 7th and 8th, but was told that he had to write to "Hearing Officer" Rick Borchardt, and that Officer Borchardt did not get Plaintiff a grievance until April 25, 2017. (Dkt. No 63, at 21).

It is undisputed that Grievance Officer Borchardt gave Plaintiff a grievance form on April 25, 2017, and that Plaintiff filed a grievance on April 27, 2017, after the five-day deadline for filing a grievance had passed. (Pl. Exh. 3; Def. Exh. 3).[1] Sergeant Stanton denied Plaintiff's grievance as untimely. (*Id.*) There is portion of the grievance form where an inmate could either agree to accept a grievance determination or indicate that he seeks to appeal the decision. (*Id.*). Neither of the boxes on this form—for agreeing to accept the decision or appealing to the Chief Administrative Officer—were checked. (*Id.*). There is a handwritten notation, "refused to sign," next to these boxes on Plaintiff's grievance form.

### III. DISCUSSION

#### A. Exhaustion of Administrative Remedies

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement "applies to all inmate suits about prison life,

---

[1] The exhibits introduced into evidence at the exhaustion hearing are referred to as Pl. Exh., for Plaintiff's exhibits, and Def. Exh., for Defendants' exhibits.

whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To properly exhaust his administrative remedies, an inmate must complete the administrative review process in accord with the applicable state procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007).

Grievance programs and procedures in county facilities are contained in the regulations governing the New York State Commission of Correction, in a chapter entitled "Minimum Standards and Regulations for Management of County Jails and Penitentiaries." N.Y. Codes, Rules & Regs. tit.9, §§ 7032.1–7032.12. Under these regulations the chief administrative officer of the correctional facility "shall establish, implement and maintain a formal inmate grievance program." *Id.* § 7032.1. The regulations provide that the facility staff "shall make forms readily available so that an inmate may file a grievance." *Id.* § 7032.4(d). "An inmate must file a grievance within five days of the date of the act or occurrence giving rise to the grievance." *Id.* § 7032.6. The regulations also provide that instructions for filing a grievance shall be included in the facility rules and regulations, and that "[e]ach inmate at any facility shall be advised in writing as to the availability of grievance forms upon admission." *Id.* § 7032.4(b), (c).

"Within five business days of receipt of a grievance, the grievance coordinator shall issue a written determination." *Id.* § 7032.4(i). The inmate has two business days after receipt of the grievance coordinator's determination to appeal to the chief administrative officer. *Id.* § 7032.4(j). The chief administrative officer then has five business days to issue a determination. *Id.* § 7032.4(k). Within three business days of the receipt of a chief administrative officer's denial of a grievance, an inmate may appeal to the State Commission of Correction. *Id* § 7032.5.

"Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." *Ross v. Blake*, 578 U.S. 632, 638 (2016). The Supreme Court has identified three examples of

4

unavailable administrative procedures: (1) those that "operate[] as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) those that are "so opaque that [they] become[], practically speaking, incapable of use," where "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it;" and (3) those where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44.

Failure to exhaust administrative remedies is an affirmative defense; accordingly, a defendant bears the burden of persuasion on whether a plaintiff failed to satisfy the exhaustion requirements. *See Jones*, 549 U.S. at 216; *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015); *Nelson v. Plumley*, No. 12-cv-422, 2015 WL 4326762, at *7, 2015 U.S. Dist. LEXIS 91905, at *20 (N.D.N.Y. July 14, 2015). The defendant discharges its initial burden of production by "demonstrating that a grievance process exists" and that the plaintiff failed to utilize the grievance procedure. *White v. Velie*, 709 F. App'x 35, 38 (2d Cir. 2017) (summary order); *Williams*, 829 F.3d at 126 n.6. The burden of production then shifts to the plaintiff, who must show that "other factors rendered a nominally available procedure unavailable as a matter of fact." *Hubbs*, 788 F.3d at 59; *see Ross*, 578 U.S. at 638 ("Under the PLRA, a prisoner need exhaust only 'available' administrative remedies.").

    **B.**    **Evidence Regarding Exhaustion**

        **1.**    **BCCF's Grievance Process**

BCCF has an Inmate Grievance Process that is described in the BCCF Inmate Handbook. (Pl. Exh. 1). The handbook states that an inmate must first "[a]ttempt to get [his grievance] resolved with the housing officer," and if "a resolution cannot be found" the inmate "may request a grievance form from the grievance officer." (Pl. Exh. 1 at 29). The handbook states that "[t]he

grievance officer conducts daily unit tours." (*Id.*). An inmate must file the grievance "within five days," [2] and the grievance coordinator will respond back in five business days. (*Id.*).

If the inmate is not satisfied with the grievance coordinator's decision, the inmate may appeal to the Corrections Facility Administrator within two business days. (*Id.*) The grievance form states, in a portion of the form with boxes to be checked for the grievance coordinator's decision: "[g]rievance denied due to submitted beyond 5 days of act or occurrence (can be appealed to COA [Chief Administrative Officer])." (Pl. Exh. 3, at 29).[3] If the inmate is not satisfied with the response from the Corrections Facility Administrator, he may appeal within three business days to the State Commission of Corrections. (*Id.*).

2.    **Plaintiff's Evidence**

a.    **Plaintiff's Testimony**

Plaintiff testified as follows. After the April 4, 2017 incident he was taken to medical for about twenty minutes and then he went to the Binghamton General Hospital. (Tr. 63–64). Plaintiff told the officers who took him to the hospital, Lieutenant Jellick and "Eric," what happened and that he wanted to file a grievance. (Tr. 67–68, 81). After about four hours at the hospital Plaintiff went back to medical. (Tr. 64–65). On April 5, 2017, he was discharged from medical and went to a cell in the special housing unit ("SHU"). (Tr. 65, 69).[4]

---

[2] As Plaintiff notes, the Inmate Handbook does not state when the five-day deadline begins; Plaintiff argues that this makes the administrative scheme "confusing and incapable of use." (Dkt. No. 201, at 5). Plaintiff did not raise that issue in response to the motion for summary judgment and, in any event, based on the Court's ruling, the Court need not address that issue.

[3] The BCCF jail administrator, Mark Smolinsky, confirmed at the exhaustion hearing that the denial of an untimely grievance can be appealed. (Tr. 246). ("Tr." refers to the transcript pages from the exhaustion hearing, in Dkt. Nos. 198, 199, and 200).

[4] The records reflect that Plaintiff was moved from medical to D-pod in SHU at 1:31 p.m. on April 5, 2017. (Tr. 204; Def. Exh. 7).

In SHU Plaintiff asked Officer Cackowsi for a grievance, and Officer Cackowski told Plaintiff "to write a slip." (Tr. 75). Plaintiff wrote a request on white paper loose-leaf paper, wrote a copy of that request on another piece of paper, and put the request under his door. (Tr. 75–76, 92–93). The copy, introduced as an exhibit at the hearing, is dated April 8, 2017; it states "request for grievance," with Plaintiff's name, and "I need a grievance please & thank you." (Pl. Exh. 8). Plaintiff testified that he did this again on April 11, 2017. (Tr. 76). The April 11, 2017 request states "I am requesting a grievance please & thank you," with the Plaintiff's name and the note "D-Block." (Pl. Exh. 9).

Plaintiff testified that officers passed by his cell every thirty minutes and that he spoke to at least four officers in D-pod, including Officer Cackowski, Sergeant Bigs and Sergeant Gillette and that "[e]very one of them knew that I wanted a grievance." (Tr. 78–82). Officers told Plaintiff to write Officer Borchardt. (*Id.*). From April 5th to 10th, Plaintiff also yelled under his door "a lot" for a grievance. (Tr. 82). Plaintiff testified that he could talk to other inmates in SHU by laying on the floor and yelling under his door. (Tr. 57).

Plaintiff testified that Officer Borchardt put the grievance form under his door the evening of April 25th. (Tr. 73–74). Plaintiff did not fill it out on the 26th and Officer Borchardt returned to get it on the 27th. (Tr. 74). Plaintiff testified that Officer Borchardt was "the one that gave it to me and denied it" on May 4th. (Tr. 83). Plaintiff testified that he asked Officer Borchardt if he could appeal it and Borchardt said "I will get you if you try to appeal it." (Tr. 83–84). According to Plaintiff, he never saw the portion of the grievance form where the grievant indicates whether he seeks to appeal and he was never asked to sign that document. (Tr. 84–85 (stating, in response to question about the "blank by grievant signature" and whether he was asked to "sign this document," "I never even seen this")).

7

Plaintiff testified that he tried to appeal by writing "the Commissioner of Corrections, Major Smolinsky, and the Broome County Attorney (the Defendants' counsel in this proceeding)[5] and placing the letters under his door to be mailed. (Tr. 85, 87-88). Plaintiff introduced a copy of the letter he claimed to have written on May 6, 2017, to Superintendent Smolinsky "appealing the grievance" that Officer Borchardt "said . . . was not on time." (Pl. Ex. 6). In this letter Plaintiff wrote that he "asked for the grievance officer after i got my face fractured 4/4/17 and he did not get my request. . . i wrote request slips for it 4/8/17 and 4/11/17 but he did not give me the grievance till 4/25/17 . . . it should not be denied cause i asked for it so many time." (*Id.*).[6] Plaintiff introduced a copy of another letter that he claims to have written seeking help. (Tr. 86–88; Pl. Exh. 10). That letter, dated April 26, 2017, and notarized on May 4, 2017, describes his injuries from April 4, 2017; states that he "started already with a grievance a notice of claim and everything"; and seeks help with getting his mail and visiting his family. (Pl. Exh. 10).

### b.   Testimony of Vernon Riddick and Brandon Corey

Plaintiff called two witnesses who were incarcerated in D-pod with him in April 2017, Vernon Riddick and Brandon Corey, who testified via video. Plaintiff testified that he was in cell 137[7] on April 5, 2017, and then moved to cell 117, and that Vernon Riddick was in 139. (Tr. 99-101, 205; Def. Exh. 9).

Riddick testified that after Plaintiff "came back from medical," Riddick heard Plaintiff ask for a grievance for "like two days." (Tr. 26, 44). "For two days straight [Plaintiff] was

---

[5] The parties stipulated that Defendants' counsel never received this letter. (Tr. 103, 105).

[6] Major Smolinsky testified that he did not receive that letter. (Tr. 203).

[7] The records reflect that Plaintiff was in cell *136* until 7:54 a.m. on April 6, 2017, when he was moved to cell 117. (Tr. 204; Def. Exh.7).

8

screaming for a grievance . . . he kept screaming and screaming for a grievance." (Tr. 30, 36). Riddick testified that corrections officers walk by every thirty minutes, and that Plaintiff asked for a grievance "every time the officer walked by." (Tr. 26–27). Riddick testified that from the window of his cell door he could see an envelope on the floor outside of Plaintiff's cell after Plaintiff "first came back from medical." (Tr. 28–29, 38). Riddick testified that no officer made daily rounds asking if prisoners would like to file a grievance. (Tr. 29).

Brandon Corey testified that Plaintiff told Corey he wanted to file a lawsuit regarding this incident; Corey never heard Plaintiff ask a corrections officer about filing a grievance. (Tr. 15).

### 3.  Defendants' Evidence

Officer Cackowski oversaw D-pod in the SHU on April 8th, 9th and 10th.[8] (Tr. 180–81, 201). Officer Cackowski did not recall Plaintiff ever saying that he wanted to file a grievance regarding the April 4th incident or calling out that he wanted to file a grievance. (Tr. 178). Plaintiff did not give Officer Cackowski the April 8th and April 11th grievance requests that Plaintiff claimed to have placed under his door, and Officer Cackowski never saw these requests on the floor outside Plaintiff's cell. (Tr. 1781–79). Officer Cackowski testified that if Plaintiff had said that he wanted to file a grievance, Officer Cackowski would have given him "a formal request slip that we have in the pod and advised him to write that to Officer Borchardt at the time . . . [and] would have gone back to [his] desk and wrote a message on our computer system . . . informing [Officer Borchardt] that [Plaintiff] wants to speak to him." (Tr. 181–82). The request form is a carbon-type form so that an inmate can keep the carbon form. (Tr. 182; Def. Exh. 5).

---

[8] Officer Cackowski did not work on April 5th, 6th or 7th, and the officers who oversaw D-pod on those days did not testify at the hearing. (Tr. 180-81).

Grievance Officer Borchardt testified that he was working on April 5th, 6th, 7th, 10th and 11th in 2017, and that he would tour the facility every day and provide inmates with grievance forms if they requested them. (Tr. 142, 148).[9] Officer Borchardt testified that he conducted disciplinary hearings in D-pod on April 5th and April 10th; Ellis did not ask Officer Borchardt for a grievance form on those days; and Officer Borchardt did not hear Ellis yelling for a grievance form. (Tr. 155). According to Officer Borchardt, Ellis did not speak to him about filing a grievance until April 25, 2017. (Tr. 143). Officer Borchardt testified that he gave Ellis a grievance form on April 25th and that Ellis returned the completed grievance form to Officer Borchardt on April 27th. (Tr. 143, 145). Officer Borchardt denied having seen the handwritten slips of paper that Plaintiff testified he placed under his door on April 8th and April 11th. (Tr. 147). Officer Borchardt testified that he did not recall having any conversations with Plaintiff after collecting the grievance form because the grievance was handled by the supervisors -- Sergeant Stanton and Lieutenant Brown. (Tr. 170).[10] Officer Borchardt did not recall whether he talked to Plaintiff about the appeal of his grievance. (*Id.*).

Sergeant Stanton denied the grievance as untimely because it was submitted more than five days from the date of the incident. (Tr. 152–53; Pl. Exh. 3). Lieutenant William Brown testified that he returned the grievance determination in person to Plaintiff on May 4, 2017. (Tr. 127). Lt. Brown advised Plaintiff of his options at that point: he told Plaintiff that he could

---

[9] On cross examination Plaintiff's counsel questioned Borchardt regarding his assertion in an affidavit submitted in support of summary judgment, that he would "ask each inmate if they wanted to file a grievance" each day that he toured the housing units. (Tr. 171). Borchardt clarified during cross-examination that he "would talk to the officer first" to see if anyone was looking for him and, with respect to talking to each inmate, Borchardt stated that he could not "always be wherever I wanted to be in that facility because code calls, medical emergencies, other things might happen that might take me away from my duties"; inmates "are not always there in the pod every day"; and Borchardt "can't possibly" talk to everybody. (Tr. 171–72, 175).

[10] Lt. Brown testified that the grievance officer did not deliver grievance determinations to inmates if the grievance involved a claim against an officer: those grievance determinations were delivered by the grievance officer's supervisor. (Tr. 131–32, 134–35).

10

appeal the grievance or accept the decision. (Tr. 127). The grievance form documents an appeal. The section entitled "Grievant's appeal to the Chief Administrative Officer," contains a signature line for the grievant, with boxes to be checked for "I agree to accept the decision" or "I am appealing to the Chief Administrative Officer." (Pl. Exh. 3). Lt. Brown testified that Plaintiff refused to sign the form. (Tr. 128). Lt. Brown told Plaintiff that if he did not sign the form the grievance would be closed. (*Id.*). Lt. Brown wrote on the form "refused to sign 5-4-17." (Tr. 128; Pl. Exh. 3).

The BCCF jail administrator, Mark Smolinsky testified that he handles the appeals from the denial of grievances. (Tr. 203). If Plaintiff had told Lt. Brown that he wanted to appeal, Lt. Brown would have delivered the Plaintiff's grievance to Major Smolinsky. (Tr. 246). Major Smolinsky never received an appeal from Ellis from the denial of his grievance. (*Id.*). Major Smolinsky testified that CCF inmates are never provided white loose-leaf paper (as Plaintiff described having used for his grievance requests): BCCF only provides yellow legal pads, (Tr. 222–23). Inmate housing records establish that Plaintiff was in cell 136, down from Riddick's cell 139 on the upper tier from April 5, 2017 until 7:54 a.m. on April 6, 2017, when Plaintiff was moved to cell 117 on the lower tier. (Tr. 204; Def. Exh. 7, 9, 12–14). Using photographs of the cells in D-pod, Major Smolinsky explained how an individual cannot see cell 117 from either inside or outside of cell 139. (Tr. 214, 215; Def. Exh. 19–20). The mail log maintained by the BCCF of incoming and outgoing inmate mail showed that there was no outgoing mail addressed to Major Smolinsky around May 6, 2017, the date Plaintiff claimed to have sent a letter to Major Smolinsky "appealing his grievance." (Tr. 225; Def. Exh. 28).

**C.    Analysis**

Plaintiff argues that the grievance process was unavailable because corrections officers ignored his pleas for a grievance form and it was Defendants' obligation to make grievance

11

"forms readily available so that an inmate may file a grievance." (Dkt. No. 201, at 3) (quoting 9 NYCRR § 7032.4(d)). Specifically, Plaintiff argues that the testimony of Officer Borchardt was impeached on cross examination, and that "over 500 inmates at Broome County had to rely on Officer Borchardt to come around at some point in the day so that they might be able to try and communicate with him that they needed a grievance form." (*Id.* at 7). Plaintiff argues that because Defendants did not present any evidence from the corrections officer in D-pod on April 6th or 7th, Plaintiff's testimony that he asked for a grievance on those days is undisputed and "Defendants cannot establish that Plaintiff failed to ask for a grievance on those two days." (*Id.* at 4–5). Plaintiff also argues that the administrative scheme is confusing and incapable of use because the inmate handbook does not describe "when the clock begins to run on most deadlines"; and that Plaintiff was thwarted from taking advantage of the grievance process because he was "threatened and warned not to appeal." (*Id.* at 5–8).

Defendants challenge the credibility of Plaintiff and his witnesses, Vernon Riddick and Brandon Corey. Defendants also argue that any deficiency in the process described in the inmate handbook is irrelevant because Plaintiff did not express any confusion about when he had to file his grievance, and did not raise this issue in response to the motion for summary judgment. (Dkt. No. 202).

Having observed all of the witnesses' demeanor and considered their testimony in connection with all the evidence, the Court does not credit Riddick's testimony, and does not credit Plaintiff's testimony regarding the April 8th and April 11th requests for a grievance for the reasons set forth below.

With respect to Riddick, Defendants note that Riddick's testimony that he heard Plaintiff yelling about wanting a grievance for two days is inconsistent with the testimony of Corey, who

12

was housed directly above Plaintiff as of 7:54 a.m. on April 6, 2017, and testified that he did not hear Plaintiff asking about filing a grievance.[11] Based on the inconsistencies between Riddick and Corey, the Court does not credit Riddick's testimony that he heard Plaintiff yelling about wanting a grievance. Riddick's testimony that from his cell window he saw an "envelope" outside Plaintiff's door, shortly after Plaintiff returned from medical, does not support Plaintiff's testimony that he left grievance requests outside his door on April 8th and April 11th because the testimony of Major Smolinsky, supported by photographs from the facility, establish that Riddick could not have seen the Plaintiff's cell door from Riddick's cell on those days. (Tr. 204, 214–15; Def. Exh. 7, 9, 19–20).

Defendants argue that Plaintiff could not have written the April 8th and April 11th requests, on *white* loose-leaf paper as he testified, (Tr. 92–93), because BCCF inmates are not provided white loose-leaf paper, as is reflected in the alleged copies that Plaintiff submitted in support of his claim, (Pl. Exh. 8, 9). Major Smolinsky's testimony that BCCF only provides yellow legal pads, (Tr. 222–23), is corroborated by Plaintiff's grievance in which he states that he was "moving on to a yellow piece of paper" to complete his description of the event, (Pl. Exh. 3), as well as Plaintiff's July 26, 2017, letter to this Court from BCCF, which was written on yellow legal pad paper, (Dkt. No. 13); *see also* Dkt. No. 130-2 (Plaintiff referred to writing "the rest of his grievance on the yellow paper"). The Court credits Major Smolinsky's testimony that SHU inmates were not provided white paper, and thus does not credit Plaintiff's testimony that he submitted requests for a grievance on April 8th and April 11th.

---

[11] Defendants also note that Riddick's testimony that Plaintiff was screaming for a grievance for two days after he returned from medical is inconsistent with Plaintiff's statements in the verified complaint that he requested a grievance on April 6th, 7th and 8th, and that on April 5th he "just laid down the rest of the day" because he "was really sore from the beating," (Dkt. No. 63, at 8).

13

The Court recognizes that Defendants did not call the officers in charge of D-pod on April 6th or April 7th, and that the representation in Officer Borchardt's affidavit about having asked each inmate if they wanted to file a grievance during his daily tours was impeached during his trial testimony. The Court need not decide, however, whether BCCF made grievance forms "readily available" to Plaintiff because the Court finds that Plaintiff failed to appeal from the denial of his grievance.

Plaintiff's testimony that he never saw the portion of the grievance form with a signature line for the grievant's determination regarding whether to appeal lacks credibility and is inconsistent with the testimony of Lt. Brown who testified that he brought the grievance determination to Plaintiff on May 4, 2017; told Plaintiff about his option to appeal; and, when Plaintiff refused to sign the form, wrote "refused to sign 5/4/17." (Tr. 127–28; Pl. Exh. 3). Plaintiff's testimony that it was Officer Borchardt who gave Plaintiff the grievance determination and then threatened "to get" Plaintiff if he filed an appeal is inconsistent with the testimony of Officer Burchardt, who denied returning the form to Plaintiff and the testimony of Lt. Brown who testified that he was the officer who returned the grievance determination. Given the inconsistencies in Plaintiff's testimony, and finding no reason to discredit Lt. Brown's testimony and what appears to be a contemporaneous recording of Plaintiff's refusal to sign the grievance form, the Court credits Lt. Brown's testimony that he informed Plaintiff of his option to appeal; that Plaintiff refused to sign the form; and that Lt. Brown then wrote "refused to sign" on the form.

The Court rejects Plaintiff's argument that he was "thwarted" from filing an appeal because Officer Borchardt brought Plaintiff the grievance determination and told Plaintiff that he "would get" Plaintiff if he appealed. The Court has found that it was Lt. Brown who brought

Plaintiff the grievance determination, and Officer Borchardt denied making this threat.[12] The Court does not credit Plaintiff's testimony regarding the threat and does not find that Plaintiff was thwarted from taking advantage of the grievance process. Thus, the record establishes that Plaintiff's grievance was denied as untimely on May 4, 2017, that Plaintiff could have appealed that denial, and that he did not. Having failed to appeal the grievance in accord with the BCCF grievance process, Plaintiff failed to exhaust his administrative remedies.

## IV.  CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's April 4, 2017 excessive force claim is **DISMISSED** for failure to exhaust administrative remedies; and it is further

**ORDERED** that the Complaint (Dkt. No. 63) is **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

Dated: February 22, 2022
       Syracuse, New York

Brenda K. Sannes
U.S. District Judge

---

[12] The Court further notes that Plaintiff's testimony that Officer Borchardt thwarted him from pursuing an appeal is inconsistent with Plaintiff's testimony that he in fact did write a letter to Major Smolinsky attempting to appeal the grievance on May 6, 2017. (Tr. 85; Dkt. No. 6).